## FREDERICKS ET AL. v. ISENMAN ET AL.

1. In a suit on a bond against the heir at law, who has aliened the descended lands before suit brought, the recovery will be only for the value of the lands in the condition in which they were at the time of the descent cast.
2. In such a suit, the improvements put on the land by the heir will not enter into the valuation of such land, nor will the heir be called on for the rents and profits, nor, on his side, can he claim for repairs.

Motion to set aside the award of a referee.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the plaintiffs, *G. R. Dutton.*

For the defendants, *Frank Bergen.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of debt against an heir at law, on a bond given by his ancestor. It is admitted that the defendant took by descent certain realty, and that he aliened it before suit brought. The only dispute of any consequence is whether an allowance should be made to the defendant for interest paid on a mortgage that was on a certain part of the property when it descended, and for moneys expended for insurance and for repairs. The case went to a reference, and the award was against the defendant for the full value of the lands, the deductions thus claimed being disallowed.

It appears from this statement of facts that the point for decision is dependent on the legal meaning of the act of this state relating to heirs and devisees. *Rev., p.* 476. This act was passed, in part, to remedy that particular defect in the common law which was occasioned by the absence of all means for levying the debt of the ancestor out of lands descended, in

those cases in which the heir had divested himself of the title to such lands before the beginning of the suit. As, in the present case, the lands in question had been aliened before the teste of the writ, the right of the plaintiff to maintain this action is to be derived exclusively from the statute just referred to, and it is obviously to the same source that we must look in order to ascertain the extent and limitations of the remedy thus given.

The first section of this law gives a right of suit to a creditor, " whether by simple contract or specialty," against the heir at law of any debtor, dying intestate, seized of lands. It is the second section that is, on the present occasion, the important one, and this provides that in case the heir at law, who is liable to pay the debt of his ancestor in consequence of lands descending to him, " shall sell, alien, or make over the same, before any action brought," such heir shall be answerable for such debts, to " the value of the said lands " by him " sold, aliened, or made over." The ensuing section consists of a proviso formulating an issue in case question is made whether descended lands have been aliened by the heir before suit was begun, and directing that if, on the issue thus joined, it be found for the plaintiff, the jury shall inquire of the value of the lands, tenements or hereditaments so descended, upon which judgment shall be given.

Now the first observation that occurs from the reading of these clauses is, that nothing is here given to the creditor but the value of the lands. The rents of such lands are not given, and not being given they cannot be claimed by the creditor, for the right of the creditor to sue is altogether a statutory right, because, in view of the alienation of the lands prior to the issuing of the writ, he did not have, by the rules of the common law, any means of redress whatever. In this respect, therefore, the statutable remedy against the heir who has passed away the title to the ancestral lands before the purchase of the writ, is not so extensive as is the remedy where the action takes precedence, in point of time, of the alienation. For when the land has not been departed with by the

heir, the creditor may, if necessary, call him to account for the rents and profits, as well as for the worth of the land itself. And it would seem that such rents could, upon proper pleadings, be recovered even at law; for although, perhaps, in the books of forms no precedent for such an injury can be found, nevertheless, in *Henningham's case*, 3 *Dyer* 344, *a*, the Chief Justice distinctly declares that such a recovery is allowable, his language being : " That if the profits of the land descended from the death of the father until the day of the writ amount sufficiently to satisfy the debt, and the plaintiff will show that to the court, and the defendant cannot deny it,. the plaintiff shall have a general judgment and execution immediately." . And even if this doctrine be questionable, it is clear that the creditor, under the circumstances stated,. would be entitled to an account of the rents and profits that had come to the hands of the heir since the descent cast. 2. *Story Eq. Jur.* 1216, *c*. But, as has been said, the remedy given by the statute has not so wide a scope as this, the value of the land alone, irrespective of any benefits that the heir may have derived from it, being the measure of the recovery.. Such being the conditions of the statutory right, it becomes. unnecessary to pause to consider the question, which is much discussed in the briefs, whether the heir may not set off and recoupe the payments made by him for repairs, as it will hardly be claimed that he can do this unless the rents are to be brought into the account, for the rule is quite general that the person enjoying the property is bound to make the necessary repairs.

Nor do I find any difficulty in deducing a just and equitable result from the terms of this law, even when accepting its language in its literal sense. The express words of the act give to the creditor proceeding under the clause in question, the value of " the lands, tenements, or hereditaments so descended;" that is, the lands in the condition in which they come to the heir, and nothing can be more reasonable than this, at least so far as concerns the interest of the heir. By force of this construction, the creditors will not reap any

benefit from the outlays of the heir, either in the way of payments of encumbrances, or in improving the property. If a mortgage should be upon the lands at the death of the ancestor, and the heir should pay it off, and should then sell the land before suit begun, the value of the land thus exonerated would not be awarded to the creditors, because they can claim only the value of the property as it was conditioned at the time of the descent cast. The statute does not make the heir who has parted with the property liable for its improved value, but simply for the value of the land descended. Nor is there any hardship in this scheme, for the heir takes to himself the rents, and his acts in paying subsequently accruing interest, making improvements and selling the land, are, out and out, voluntary acts. It will be perceived that the effect of this interpretation is to subrogate the creditor to the right of the heir in the land to the extent of its value in the state in which it was when the law cast the title upon him.

As a consequence of these views, I conclude that the referee was right in refusing to make any allowance to the defendant for expenditures in insuring, in keeping down the interest on the encumbrances, and in repairing the premises. It was the referee's duty to ascertain, as nearly as practicable, the value of the descended land in the condition in which it was at the death of the ancestor. So far as the papers before me enable me to judge, this officer has put a valuation on these lands that will fairly represent their worth, less encumbrances and the widow's dower, at the time they came to the defendant. Consequently, no reason appears for disturbing such finding.

The plaintiff may take judgment on the award.